1

2

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

4

5

6  CECIL MORTON,

7                                    Plaintiff,

8          v.

9  VANESA JOHANSON, et. al.,

10                                   Defendants.

Case No. C16-5728 RJB-TLF

**REPORT AND
RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY
JUDGMENT**

**Noted for <u>March 1, 2018</u>**

11          The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

12  States Magistrate Judge Theresa L. Fricke. Presently before the Court is plaintiff Cecil Morton's

13  Motion for Summary Judgment (plaintiff's Motion) and defendants Patrick Glebe, Eric Jackson,

14  Vanesa Johanson, and Ronnie Rucker's Motion for Summary Judgment (defendants' Motion).

15  Dkt. 44; Dkt. 46.

16          The Court, having reviewed plaintiff's complaint, the parties' cross-motions for summary

17  judgment, and all related briefing, recommends that defendants' Motion for Summary Judgment

18  (Dkt. 46) be granted. The plaintiff previously filed a motion for Partial Summary Judgment

19  which the Court denied. Dkt. 41. The plaintiff's newest motion does not raise new claims,

20  arguments, or substantially different evidence (compare Dkt. 21 with Dkt. 44); therefore the

21  Court should refuse to reconsider its previous ruling. Plaintiff's current Motion for Summary

22  Judgment (Dkt. 44) should be denied.

23

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 1

The defendants' Motion (Dkt. 46) covers all the claims raised by plaintiff's complaint and supplemental complaint, and establishes defendants are entitled to judgment as a matter of law. Accordingly, this case should be resolved against the plaintiff by dismissal under Federal Rule of Civil Procedure 56, on the merits.

## I.    INTRODUCTION

In his 42 U.S.C. § 1983 complaint and supplemental complaint, plaintiff alleges defendants denied him due process when they refused to allow his witnesses (his wife) to testify at an April 5, 2011 disciplinary hearing (the April 2011 Hearing), which involved an allegation that plaintiff had assaulted his wife during a visit. Dkts. 4, 18.

At the April 2011 Hearing, plaintiff was found guilty of an assault on a visitor and was sanctioned to 15 days segregation, 45 days loss of good conduct time, and 90 days visitation restriction. Dkt. 13-2, at 4; Dkt. 23, at 3. The infraction appeared on plaintiff's OMNI Legal Face sheet under infraction summary. Dkt. 28, Declaration of Tera Linford in Support of Defendants' Response to Plaintiff's Motion for Partial Summary Judgment ("Linford Declaration"), Attachment A, OMNI Legal Face sheet excerpts dated December 3, 2014, Infraction Summary number 7 (incident date 4/2/2011 violation code 711), at 6.

Plaintiff appealed his disciplinary sanction. After his appeal of the disciplinary sanction was denied, plaintiff challenged the infraction and sanctions in state court. Dkt. 4, at ¶ 33. On April 11, 2016, five years after the April 2011 Hearing, the Washington Supreme Court granted the petition, in part, and remanded the matter to the Department of Corrections (DOC) to conduct a new hearing to allow plaintiff's wife to participate as a witness by telephone, in person, or by written statement. Dkt. 23, at 5-6; *see* Dkt. 4, at ¶ 35; Dkt. 46, at 4. At the rehearing, the infraction was dismissed, it appears, because the Superintendent failed to sign-off on a

1    continuance. Dkt. 23, at 7; Dkt. 45, at 7-8; Dkt. 48, at 4; Dkt. 15, at 6-7; Dkt. 13-2, at 7. Plaintiff

2    makes no claim that he was denied due process at this second hearing.

3            According to the defendants, the infraction that was the subject of the April 2011 Hearing

4    was expunged from plaintiff's record and is no longer listed on his Legal Face Sheet. Dkt. 28,

5    Linford Declaration, Attachment B, OMNI Legal Face sheet excerpts dated October 5, 2016,

6    Infraction Summary at 9 (not showing number 7, the incident date of 4/2/2011 violation code

7    711). In addition, all of plaintiff's 45 days of good conduct time were restored and his earned

8    early release date was moved up 45 days from May 21, 2045 (Dkt. 28, Linford Decl.,

9    Attachment A at 5)  to April 6, 2045 (*id*., Linford Decl., Attachment B at 8). Because the good

10   conduct time was restored before plaintiff was released from DOC custody, no change ultimately

11   occurred to plaintiff's actual length of confinement.  *Id*.

12           Plaintiff's participation in the Extended Family Visiting Program (EFV Program) was

13   terminated in April 2011 after he was found guilty of the 711 serious infraction. Dkt. 50, Stuart

14   Declaration, at 7; Dkt. 4; Dkt. 15. In May 2016, after his 711 infraction was dismissed, plaintiff

15   reapplied to the EFV Program. Dkt. 48. Defendant Ronnie Rucker, plaintiff's assigned counselor

16   at the time, prepared plaintiff's EFV application when plaintiff was re-applying for EFVs with

17   his wife in May 2016. *Id*. Rucker included information in the application regarding plaintiff's

18   dismissed 2011 infraction. *Id*.

19           Defendants assert that Rucker had safety concerns about Mr. Morton's having EFVs with

20   his wife, and they also contend that Rucker's reason for putting the information about the prior

21   events into the mix was to provide context about why plaintiff was reapplying for the program.

22   *Id*. However, plaintiff alleges that Rucker included this information in a retaliatory effort to

23   subvert  plaintiff's desire to visit with his wife, that Rucker was allegedly retaliating because of

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 3

plaintiff's grievance against him (filed in May 2016), and was also retaliating against plaintiff for appealing his infraction to the Washington Court of Appeals and Supreme Court. Dkt. 18.

Plaintiff argues that he is entitled to judgment as a matter of law against defendants Johanson, Glebe, and Jackson because they violated his due process rights when they neglected to allow him to call witnesses at his 711 infraction hearing, after which he was placed in segregation for 9-months, lost visitation privileges, and lost 45 days of good conduct time. Dkt. 44. Defendants oppose plaintiff's Motion on the grounds that plaintiff raises nearly identical arguments in the instant motion as were raised and rejected in his prior Motion for Partial Summary Judgment. Dkt. 55. Defendants also contest the substance of plaintiff's assertions and move for summary judgment with respect to all of plaintiff's claims against defendants Johanson, Glebe and Jackson, as well as respect to all of plaintiff's claims against defendant Rucker. Dkt. 46.

Specifically, defendants move for summary judgment with respect to plaintiff's due process claims against Johanson, Glebe and Jackson on the grounds that, because plaintiff's loss of good conduct time was restored, he no longer has a relevant Fourteenth Amendment liberty interest necessary to support his due process claim. *Id.* Defendants also move for summary judgment with respect to plaintiff's Fourteenth Amendment and Fifth Amendment claims against defendant Rucker on the grounds that plaintiff has no Fourteenth Amendment liberty interest in visitation and that the Due Process Clause of the Fifth Amendment applies only to actions of the federal government, not to those of state or local governments. *Id.* Defendants further move for summary judgment with respect to plaintiff's claim that defendant Rucker retaliated against him for exercising his First Amendment rights on the grounds that plaintiff fails to provide sufficient evidence to support the necessary elements of his retaliation claim that Rucker's actions were

1    substantially motivated by plaintiff's protected conduct and that there was no legitimate

2    penological reasons for Rucker's actions. *Id.*

3        For the reasons set forth below, the undersigned recommends that plaintiff's Motion

4    should be denied, and the defendants' Motion should be granted.

5                            **II. STANDARD OF REVIEW**

6    **A.    Summary Judgment**

7        Under Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary

8    judgment if the movant shows that there is no genuine dispute as to any material fact and the

9    movant is entitled to judgment as a matter of law." A party is required to support their arguments

10   concerning whether a genuine dispute of material fact exists by:

11       (A) citing to particular parts of materials in the record, including depositions,
         documents, electronically stored information, affidavits or declarations, stipulations
12       (including those made for purposes of the motion only), admissions, interrogatory
         answers, or other materials; or
13       (B) showing that the materials cited do not establish the absence or presence of a
         genuine dispute, or that an adverse party cannot produce admissible evidence to
14       support the fact.

15   Fed. R. Civ. P. 56(c)(1). The central issue is "whether the evidence presents a sufficient

16   disagreement to require submission to a jury or whether it is so one-sided that one party must

17   prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

18        The moving party bears the initial burden of showing "that there is an absence of

19   evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

20   (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by

21   presenting evidence that negates an essential element of the nonmoving party's case, or by

22   establishing that the non-movant lacks the quantum of evidence needed to satisfy its burden at

23   trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

24   Where the moving party bears the burden at trial, it can meet its initial burden by presenting

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 5

1  evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving

2  party; the evidence presented must establish beyond controversy every essential element of the

3  claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003);

4  *Soremekun v. Thrifty Payless, Inc.*, 509, F.3d 978, 984 (9th Cir. 2007).

5       If the moving party meets its initial responsibility, the burden then shifts to the

6  nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus.*

7  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which

8  the evidence is such that a "reasonable jury could return a verdict for the nonmoving party."

9  *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit

10  under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute.

11  *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in

12  the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v.*

13  *Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

14       In ruling on a motion for summary judgment, the Court must draw all reasonable

15  inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and

16  may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 255; *see*

17  *also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (district court cannot

18  disregard evidence at the summary judgment stage solely based on its self-serving nature, even if

19  it is uncorroborated). When parties file cross-motions for summary judgment, as the parties have

20  done here, each motion "must be considered on its own merits." *Fair Housing Council of Riverside*

21  *County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The court must review the

22  evidence submitted in support of each cross-motion. *Id.* And, although the parties may each assert

23

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 6

1   there are no uncontested issues of material fact, the Court ultimately must determine whether there

2   are genuine issues of material fact. *Id.*

3   **B.      Section 1983 Standard**

4          In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that

5   he suffered a violation of rights protected by the Constitution or created by federal statute, and

6   (ii) that the violation was proximately caused by a person acting under color of state law. *See*

7   *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is

8   satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

9   another's affirmative act, or omitted to perform an act which he was legally required to do that

10  caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981)

11  (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

12                                  **III. DISCUSSION**

13  **A.      Fourteenth Amendment – Denial of Due Process at April 2011 Disciplinary Hearing**

14  **Claims Against Defendants Johanson, Jackson and Glebe**

15          Plaintiff maintains that defendant Johanson violated his due process rights at the April

16  2011 Hearing because she refused to write down his wife's name as a witness, and defendants

17  Jackson and Glebe "became responsible" for defendant Johanson's actions when they failed to

18  correct her actions during the course of their supervisory responsibilities. Dkt. 44, at 6-7; *and see*

19  Dkt. 22, at 6-7 (plaintiff's prior Motion for Partial Summary Judgment).  Specifically, plaintiff

20  alleges that defendants Jackson and Glebe were aware of the unconstitutional denial of due

21  process because "the failure to call any of plaintiff's witnesses was apparent from the documents

22  generated in the course of the disciplinary proceeding" and because plaintiff "identified the due

23

24

25

process violations in his appeal." Dkt. 44, at 8-9; Dkt. 22, at 8. Thus, he maintains, defendants Jackson and Glebe knew what to look for. *Id.*

Plaintiff argues that summary judgment on his due process claims is appropriate because the Washington Supreme Court "has already determined that [his] due process rights were violated." Dkt. 44 at 9-10; Dkt. 22 at 9. Defendants, in response, contend that plaintiff presented these same arguments on his first Motion for Partial Summary Judgment and they were rejected by the Court at that time. Dkt. 55. The undersigned recommends that the Court hold firm to the previous ruling.  Plaintiff presents no additional evidence or arguments that would potentially alter the Court's analysis, reasons, or conclusions for denying plaintiff's first Motion for Partial Summary Judgment. Dkt. 22; Dkt. 35. As such, the Court should decline to reconsider these issues as they have already been considered and decided by the Court's prior order. Dkt. 35. Alternatively, for the same reasons noted in the Court's prior order denying plaintiff's first motion, his current Motion for Summary Judgment should also be denied.

The defendants also move for summary judgment on the grounds that because plaintiff's infraction was expunged, and his good time credit restored, he no longer has a relevant Fourteenth Amendment liberty interest and his time in segregation and loss of visitation do not themselves implicate a liberty interest. Dkt. 46.

The Due Process Clause of the Fourteenth Amendment confers both procedural and substantive rights. *See Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996) *overruled on other grounds by Crown Point Dev., Inc. v. City of Sun Valley,* 506 F.3d 851, 856–57 (9th Cir. 2007).  A § 1983 claim based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and, (3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th

1    Cir. 1993).  The substantive component of the Due Process Clause protects individuals from the

2    arbitrary deprivation of their liberty by government. *County of Sacramento v. Lewis*, 523 U.S.

3    833, 845-49 (1998). However, "only the most egregious official conduct can be said to be

4    'arbitrary in the constitutional sense.'" *Id*. at 846 *citing, Collins v. Harker Heights*, 503 U.S. 115,

5    129 (1992). The Supreme Court has identified the cognizable level of executive abuse of power

6    as "that which shocks the conscience." *Id*.

7        Prisoners have a Fourteenth Amendment right to certain due process protections when

8    facing a disciplinary violation. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974). The due

9    process protections attach because a prisoner has a liberty interest in being released on his

10    release date; when the prisoner is charged with a violation of disciplinary rules in the prison

11    system, the release date may be extended if the prisoner is found guilty of the violation and loses

12    good time credits as a disciplinary sanction. *See id*. Yet in a situation where lost good conduct

13    time is restored, with no ultimate change in the length of a prisoner's sentence, there is no further

14    liberty interest at stake because the due process error has been rectified. *See id*.; *Asphelman v. Van*

15    *Ogle*, No. C09-5389, 2010 WL 2342531, at *2–5 (W.D. Wash. Apr. 15, 2010); *see also, Young*

16    *v. Hoffman*, 970 F.2d 1154 (2nd Cir. 1992) (when a procedural defect in a prison disciplinary

17    hearing is cured through re-hearing, no liberty interest is lost and a prisoner cannot recover even

18    nominal damages). This is due in part to the preference for allowing state courts the "opportunity

19    to correct [the state's] own constitutional errors." *Preiser v. Rodriguez*, 411 U.S. 475, 490

20    (1973).

21        As previously noted, plaintiff successfully challenged the due process he received at the

22    April 2011 Hearing. The Washington Supreme Court remanded the matter to the DOC to

23    conduct a new hearing where plaintiff's wife could participate as a witness; as a result of the

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 9

1    rehearing, the infraction was dismissed. *See* Dkt. 23, at 5-7; Dkt. 4, at ¶ 35; Dkt. 45, at 7-8; Dkt.

2    48, at 4; Dkt. 15, at 6-7.

3        Defendants present evidence that, thereafter, the serious infraction was expunged from

4    plaintiff's record, plaintiff's 45 days of good conduct time (that had previously been revoked due

5    to the infraction) were restored, and his earned early release date (ERD) moved back 45 days

6    from May 21, 2045 to April 6, 2045. *See* Dkt. 28, Linford Decl., Attachment A at 5 and

7    Attachment B at 8.  Because the good conduct time was restored before plaintiff was released

8    from DOC custody, there has been no change to plaintiff's actual length of confinement. In sum,

9    he no longer has a liberty interest in those previously revoked credits because they have been

10    restored -- therefore he no longer has a due process claim stemming from the lost good conduct

11    time.

12        Plaintiff does not dispute the fact that his 45 days of good conduct time were restored.

13    And he does not allege that the actual length of his confinement was affected as a result of the

14    ultimately dismissed infraction. Plaintiff argues in response to defendants' Motion that he is

15    "aware that the dismissed WAC 711 2011 infraction is still in the DOC liberty computer system

16    …, and other chronos, memos." Dkt. 54 at 2, 16.

17        Plaintiff neither explains where or in what context the infraction is allegedly mentioned

18    in the liberty computer system or chronos memos, nor how these references are included in his

19    official record or central file. *See California Architectural Building Products, Inc. v. Franciscan*

20    *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (Mere disagreement or the bald assertion

21    stating a genuine issue of material fact exists does not preclude summary judgment.). In fact,

22    plaintiff acknowledges in his supplemental complaint that the infraction "was eventually removed

23    from plaintiff's central file." Dkt. 18, at ¶ 38. Even accepting plaintiff's assertion as true for

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 10

1    purposes of this analysis, he presents no evidence that the reference to the infraction in some

2    unspecified context in the liberty computer system or chronos memos would deny him any liberty

3    interest that would potentially support a due process claim.

4          Plaintiff also disagrees that he fails to state a claim for a liberty interest with respect to his

5    dismissed infraction, and relies on the Court's holding in *Nonnette v. Small*, 316 F.3d 872 (9th Cir.

6    2002) to argue that  "lack of fair hearing violates due process, wholly apart from conditions of

7    confinement and without regard to the *Sandin* requirements." Dkt. 52 at 10-14. However, *Nonnette*

8    is distinguishable from the instant case.

9          In *Nonnette*, the plaintiff had not received a rehearing that complied with the requirements

10   of procedural due process at the time he filed his § 1983 case. In addition, due to his release from

11   custody, a direct challenge to his disciplinary hearing would have been moot. Because of this

12   procedural complexity, the Court held the plaintiff must be allowed to proceed with his § 1983

13   action without having directly challenged his allegedly unfair disciplinary hearing. Dkt. 55 at 2-3;

14   *Nonnette*, 316 F.3d 872. By contrast, in this case Mr. Morton has directly challenged and prevailed

15   on the appeal of his 2011 disciplinary hearing. As a result, he received a remedy for the due

16   process violation -- he received a rehearing at which the infraction was dismissed, his lost good

17   conduct time restored, and no ultimate change occurred to the length of his confinement.

18         Defendants further argue that plaintiff has no liberty interest regarding the other

19   disciplinary sanctions he received at his 2011 disciplinary hearing, *i.e.*, 15 days of segregation

20   and 90 days visitation restriction. Dkt. 46. Plaintiff is not entitled to any additional process. First,

21   the Constitution itself does not confer on a prisoner a liberty interest in avoiding "more adverse

22   conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d

23   174 (2005). State regulations, however, may create a liberty interest in avoiding more restrictive

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 11

1    confinement where the nature of the confinement "imposes atypical and significant hardship on

2    the inmate in relation to the ordinary incidents of prison life." *Id.* at 223 *quoting Sandin v.*

3    *Conner*, 515 U.S. 472, 483-84 (1995); *see also Jackson v. Carey,* 353 F.3d 750, 755 (9th Cir.

4    2003). Administrative segregation normally falls within the terms of confinement ordinarily

5    contemplated by a sentence and does not implicate a liberty interest. *See Toussaint v. McCarthy*,

6    801 F.2d 1080, 1091-92 (9th Cir. 1986) *abrogated in part on other grounds by Sandin*, 515 U.S.

7    at 483-84; *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *and see, e.g., Sandin*, 515

8    U.S. at 483-84 (placement in segregation for 30 days did not impose an atypical and significant

9    deprivation and did not implicate a liberty interest protected by the U.S. Constitution);

10   *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (15 days in segregation does not

11   trigger due process protections); *Smith v. Noonan*, 992 F.2d 987 (9th Cir. 1993) (Washington

12   state inmates do not have a protected liberty interest in remaining in the general population).

13   Prison inmates have a right to due process in connection with placement in administrative

14   segregation only when it is shown that such placement imposes an "atypical and significant

15   hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at

16   484; *see also Ramirez,* 334 F.3d at 860.

17          Here, plaintiff fails to present any evidence or argument indicating his 15 days in

18   segregation constituted an atypical or significant hardship in relation to the ordinary incidents of

19   prison life. His Motion for Summary Judgment should be denied. Defendants are entitled to

20   summary judgment as they have met their burden of establishing plaintiff lacks the quantum of

21   evidence needed to satisfy his burden at trial and, even accepting plaintiff's allegations as true,

22   he fails to raise a genuine issue of material fact in opposition as to whether the sanction of 15

23   days of segregation implicated a liberty interest and by extension his due process rights.

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 12

Second, plaintiff fails to establish that any liberty interest was implicated by the denial of visitation. Prisoners have no right to unfettered visitation. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996). Denial of a prisoner's access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence." *Ky. Dep't of Corr.*, 490 U.S. at 460 *quoting Hewitt v. Helms*, 459 U.S. 460, 468 (1983) *overruled on other grounds by Sandin*, 515 U.S. 472. Inmates have no implicit right to contact visitation. *See Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994) (per curiam); *Toussaint*, 801 F.2d at 1113-14 *abrogated in part on other grounds by Sandin*, 515 U.S. at 483-84. Therefore "a refusal to permit an inmate family visits does not impose an atypical and significant hardship; rather, an inmate's inability to visit with whom he wishes is an 'ordinary incident of prison life.'" *Macedon v. California Department of Corrections*, 67 Fed.Appx. 407, 408 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. 472).

Plaintiff does not argue or present any facts or evidence to indicate that his 90 days of visitation restriction imposed an "atypical or significant hardship" as compared to the deprivations encountered by the general prison population and his Motion for Summary Judgment should be denied. Defendants are entitled to summary judgment as they have met their burden of establishing plaintiff lacks the quantum of evidence needed to satisfy his burden at trial and, even accepting plaintiff's allegations as true, he has failed to raise a genuine issue of material fact in opposition as to whether the sanction of 90 days visitation restriction implicated a liberty interest and by extension his due process rights.

**B.    Fourteenth Amendment – Placement in Administrative Segregation/Intensive Management Status (IMS)**

Plaintiff also argues that, although he was nominally given 15 days in segregation for the infraction, he in fact spent nine months in segregation over the infraction that was ultimately dismissed. Dkt. 52 at 3. The defendants dispute this allegation and contend that plaintiff was temporarily placed in administrative segregation, after which he was demoted to Intensive Management Status (IMS) and was housed in the Intensive Management Unit until December 20, 2011. Dkt. 50, Stuart Declaration, at 5-7. Defendants argue that plaintiff's IMS placement does not implicate a liberty interest because a prisoner has no constitutional right to a particular classification status. Dkt. 46, at 14.

The evidence shows that plaintiff was initially placed in administrative segregation on April 2, 2011, pending the April 2011 Hearing related to the subject infraction for assaulting a visitor. Dkt. 29, at 5; Dkt. 50, at 5-7. After being found guilty of the infraction, plaintiff was retained on administrative segregation pending referral to IMS due to the details and seriousness of the infraction; and thereafter he was referred to IMS, on May 2, 2011, with certain expectations, including that he remain infraction free for six months. Dkt. 29, at 6; Dkt. 50, at 5-7. The evidence also indicates that plaintiff was to be removed from IMS on October 29, 2011 assuming he met the assigned expectations. Dkt. 29, at 7; Dkt. 50, at 5-7. Another document appears to indicate that he was still on administrative segregation and/or IMS on December 27, 2011. Dkt. 29, at 8.

Even assuming plaintiff was held in either administrative segregation and/or IMS for nine months, he fails to present evidence indicating that this constituted an "atypical or significant hardship" that would implicate a liberty interest and his due process rights. Determining whether a prison condition is "atypical and significant" requires consideration of the specific facts of each case. *Keenan,* 83 F.3d 1083. The Court considers three guideposts in framing the inquiry: (1)

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 14

1    whether the challenged condition mirrored those conditions imposed upon inmates in

2    administrative segregation and protective custody, and thus comported with the prison's

3    discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and

4    (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

5    *Serrano*, 345 F.3d at 1078.

6        Even if the Court accepts Mr. Morton's allegations as true for purposes of this analysis,

7    the challenged condition *is* administrative segregation which, in and of itself, generally does not

8    implicate a protected liberty interest. *Serrano,* 345 F.3d at 1078; *see also May v. Baldwin,* 109

9    F.3d 557, 565 (9th Cir.1997) (noting that a prisoner "has 'no liberty interest in freedom from

10   state action taken within the sentence imposed,' ... and the Ninth Circuit explicitly has found that

11   administrative segregation falls within the terms of confinement ordinarily contemplated by a

12   sentence") (citations omitted); *see Sandin*, 515 U.S. at 485-86; *see also Toussaint*, 801 F.2d at

13   1092 *abrogated in part on other grounds by Sandin*, 515 U.S. 472 (noting that "administrative

14   segregation is the sort of confinement that inmates should reasonably anticipate receiving at

15   some point in their incarceration"); *Bryant v. Cortez*, 536 F.Supp.2d 1160 (C.D. Cal. 2008)

16   (finding no liberty interest when housed in administrative segregation for 18 months). The Court

17   also notes that generally a prisoner also "has no constitutionally protected right to a certain

18   classification status." *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).

19       Thus, when the defendants placed Mr. Morton on IMS or administrative segregation there

20   was no impact on a liberty interest -- in order for Mr. Morton to possess a liberty interest when a

21   change of confinement occurs, he would need to show it amounted to an "atypical and significant

22   hardship." *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000). Plaintiff does not present

23

24

25

1  evidence that his placement in administrative segregation and/or IMS for nine months constituted

2  "an atypical or significant hardship."

3      Furthermore, even if plaintiff had argued or presented evidence that his placement

4  constituted an "atypical or significant hardship" and implicated a liberty interest, "due process

5  requires only the following procedures: prison officials must hold an informal non-adversary

6  hearing within a reasonable time after the prisoner is segregated. The prison officials must

7  inform the prisoner of the charges against the prisoner or their reasons for considering

8  segregation. Prison officials must allow the prisoner to present his views." *Toussaint,* 801 F.2d at

9  1100 (footnote omitted) *abrogated in part on other grounds by Sandin*, 515 U.S. at 483-84.

10  "[D]ue process does not require detailed written notice of charges, representation by counsel or

11  counsel-substitute, an opportunity to present witnesses, or a written decision describing the

12  reasons for placing the prisoner in administrative segregation." *Id.* at 1100-01. Here, defendants

13  present evidence, which plaintiff does not dispute, that plaintiff received notice of the reasons he

14  was in segregation at his initial segregation review, and he received periodic reviews of his

15  classification status after two, seven and 14 days in administrative segregation and every 30 days

16  after that. Dkt. 50, Stuart Declaration, at 5-7.

17      In sum, plaintiff provides no factual basis or evidence showing that his placement in

18  administrative segregation and/or IMS for nine months imposed an "atypical and significant

19  hardship" or that his prison sentence was lengthened as a result of this placement, nor does he

20  even argue as such.[1] Accordingly, plaintiff fails to either establish his own entitlement to

21

22  _____

[1] Plaintiff does not raise the issue or allege his prison sentence was lengthened due to his time in IMS or
segregation. However, the Court does note that "the Constitution itself does not guarantee good-time
credit for satisfactory behavior while in prison." *Wolff*, 418 U.S. at 556–57. Washington state courts have

23  also not recognized an independent state-created interest in amassing early release credits. *In re Galvez*,
79 Wn. App. 655, 904 P.2d 790 (1995) (inmate placed in administrative segregation need not be given

24  good-time credit or a reduction in sentence for the time spent in segregation). Thus, it has been held that

25

1    summary judgment or raise a genuine issue of material fact in response to defendants' Motion

2    for Summary Judgment that this placement violated his due process rights. *See, e.g., Anderson v.*

3    *County of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995), as amended, 75 F.3d 448 (9th Cir. 1995)

4    (hardship associated with administrative segregation, such as confinement to one's cell for a

5    lengthy period of time, does not violate the Due Process Clause because there is no liberty

6    interest in remaining in general population). Accordingly, the Court recommends that plaintiff's

7    Motion for Summary Judgment on this claim be denied, and defendants' Motion be granted.

8    **C.    Fourteenth Amendment Due Process Claim re: Defendant Rucker – EFV**

9    **Application Process**

10    Plaintiff claims that defendant Rucker violated his Fourteenth Amendment rights when

11    compiling his EFV application packet. Dkt. 18. Plaintiff alleges he has a right to due process

12    while applying for programming or visitation. Dkt. 18, at 7-11; Dkt. 33, at 2, 7. Defendants move

13    for summary judgment with respect to this claim on the grounds that plaintiff has no liberty

14    interest in visitation and, as such, cannot claim due process protections while applying to the

15    EFV program. Dkt. 46 at 16; *see Ingraham v. Wright*, 430 U.S. 651, 672 (1977) ("Due process is

16    required only when a decision of the State implicates an interest within the protection of the

17    Fourteenth Amendment.").

18

---

19    generally there is no liberty interest, and therefore no due process protection, in the mere opportunity to
20    earn good time credits. *See Ashby v. Lehman*, 307 Fed.Appx. 48, 49 (9th Cir. 2009) (prisoner had no
     "constitutionally protected liberty interest in earning early release time credits."); *Abed v. Armstrong,* 209
21    F.3d 63, 66–67 (2d Cir. 2000) (although inmates have a liberty interest in good time credit they have
     already earned, no such interest has been recognized in the opportunity to earn good time credit where
22    prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good
     time credit); *Antonelli v. Sheahan,* 81 F.3d 1422, 1431 (7th Cir.1996) (convicted prisoner with no access
23    to good time credit program because he was incarcerated in county jail had no constitutional interest in
     the opportunity to earn good time credit); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995) (applying
24    *Sandin* and holding that the loss of the opportunity to earn gain time is not a constitutionally protected
     liberty interest); *Hill v. Swarthout,* No. 2:15-CV-2012 AC P, 2017 WL 431359, at *3 (E.D. Cal. Jan. 31,
     2017).

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 17

As discussed above, plaintiff generally has no liberty interest in visitation. Prisoners have no right to unfettered visitation. *Ky. Dep't of Corr.*, 490 U.S. 454, 460 (1989); *Keenan*, 83 F.3d at 1092. Furthermore, denial of a prisoner's access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence." *Ky. Dep't of Corr.*, 490 U.S. at 460 *quoting Hewitt*, 459 U.S. at 468 *overruled on other grounds by Sandin*, 515 U.S. 472; *see Barnett*, 31 F.3d at 817 (Inmates have no implicit right to contact visitation.). The EFV program at issue in this case is a privilege, not a right. RCW 72.09.490(1) ("The department shall establish a uniform policy on the privilege of extended family visitation."). Prisoners in Washington State have no constitutionally or statutorily protected interest in extended family visits. *Hill v. Wash. State Dep't of Corr.*, 628 F.Supp.2d 1250, 1262 (W.D. Wash. 2009); *In re Dyer*, 143 Wash.2d 384, 393, 20 P.3d 907 (2001). Accordingly, "a refusal to permit an inmate family visits does not impose an atypical and significant hardship; rather, an inmate's inability to visit with whom he wishes is an 'ordinary incident of prison life.'" *Macedon*, 67 Fed.Appx. at 408 (quoting *Sandin*, 515 U.S. 472).

Plaintiff does not argue or present any evidence indicating that the denial of the privilege of EFVs here somehow constituted an atypical and significant deprivation from the normal incidents of prison life. Accordingly, plaintiff fails to either establish his own entitlement to summary judgment or raise a genuine issue of material fact in response to defendants' Motion for Summary Judgment that the denial of EFVs implicated a due process right. Accordingly, defendants' Motion should be granted.

**D.    Fifth Amendment Due Process Claim re: Defendant Rucker**

In his supplemental complaint, plaintiff asserts that defendant Rucker violated his due process rights under the Fifth Amendment. Dkt. 18, at ¶ 57. Defendant also moves for summary

1    judgment with respect to this claim. Dkt. 46. The Due Process Clause of the Fifth Amendment

2    applies only to actions of the federal government, not to those of state or local governments. *Lee*

3    *v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001). Plaintiff does not allege that defendant

4    Rucker is a federal actor or dispute that he is, instead, a state employee. *See* Dkt. 34, at 2; Dkt.

5    48. Therefore, plaintiff's Fifth Amendment due process claims against defendant Rucker are

6    frivolous; the defendants' Motion should be granted and this claim dismissed.

7    **E.    Plaintiff's Retaliation Claims re: Defendant Rucker for Exercising First**

8    **Amendment Rights**

9            Plaintiff also claims in his supplemental complaint that defendant Rucker retaliated

10   against him for exercising his protected First Amendment rights. Plaintiff does not move for

11   summary judgment with respect to his retaliation claim against defendant Rucker. Dkt. 44, at 1.

12   However, defendants move for summary judgment seeking dismissal of this claim on the

13   grounds that plaintiff fails to provide sufficient evidence to support every element of a viable

14   retaliation claim. Dkt. 46, at 2.

15           Specifically, plaintiff alleges that he exercised his First Amendment rights by filing a

16   challenge to the infraction in state court and by filing grievances. Dkt. 18. He alleges defendant

17   Rucker retaliated against him for engaging in that protected conduct by: including information

18   about plaintiff's dismissed infraction in the EFV application plaintiff submitted in May 2016;

19   additionally, Mr. Morton alleges that, as a result of defendant Rucker's retaliatory acts, his EFV

20   application was denied. Dkt. 18, at ¶ 57.

21            "Prisoners have a First Amendment right to file grievances against prison officials and to

22   be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012)

23   (citation omitted); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  To

24

25

state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An

assertion that a state actor took some adverse action against an inmate (2) because of (3) that

prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Moreover, to prevail on a retaliation

claim, a plaintiff must show that his protected conduct was "the 'substantial' or 'motivating'

factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

A plaintiff must specifically identify the protected conduct at issue, name the defendant

who took adverse action against him, and plead that the allegedly adverse action was taken

"because of" plaintiff's protected conduct. *See Soranno's Gasco*, 874 F.2d at 1314 (internal

citations omitted) (plaintiff must show that his protected conduct "was a substantial or

motivating factor in the defendant's decision."). This may be accomplished by demonstrating

that the defendant knew of the protected conduct, and either: (1) there was proximity in time

between the protected conduct and the allegedly retaliatory action, or (2) the defendant expressed

opposition to the speech, or (3) the defendant's proffered reason for the adverse action was false

or pretextual. *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009); *see Pratt v. Rowland*, 65

F.3d 802, 808 (9th Cir. 1995) (timing can be considered as circumstantial evidence of retaliatory

event). Although timing can be considered as circumstantial evidence of retaliatory action,

timing alone is generally not sufficient to establish retaliation. Overall circumstances of the

alleged retaliation must be considered and not simply the order of the events. *See Pratt*, 65 F.3d

at 808.

The Ninth Circuit has found that preserving institutional order, discipline and security are

legitimate penological goals which, if they provide the motivation for an official act taken, will

1    defeat a claim of retaliation. *Barnett* , 31 F.3d at 816; *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th

2    Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the

3    legitimate policies and goals of the correctional institution in the preservation of internal order

4    and discipline, maintenance of institutional security, and rehabilitation of prisoners."). The

5    burden is on the plaintiff to allege and prove that legitimate correctional purposes did not

6    motivate the actions by prison officials about which he complains. *See Pratt*, 65 F.3d at 806,

7    808. District courts must "afford appropriate deference and flexibility" to prison officials "in the

8    evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."

9    *Pratt*, 65 F.3d at 807 (citing *Sandin*, 515 U.S. 472).

10    **1.    Legally Protected Constitutional Conduct**

11    Plaintiff is asserting retaliation based on his appeal of his infraction to the Washington

12    Court of Appeals and Supreme Court, and his filing of grievances against defendant Rucker. Dkt.

13    18, at ¶ 57. Defendants agree that both of these activities are constitutionally protected under the

14    First Amendment. Dkt. 46, at 18. The Court concludes that plaintiff was engaged in

15    constitutionally protected activity of appealing his infraction and filing grievances.

16    **2.    Adverse Action**

17    "[A] retaliation claim may assert an injury no more tangible than a chilling effect on First

18    Amendment rights." *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001). However, "a

19    plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some

20    other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Rhodes*, 408 F.3d at 568

21    n.11.

22    Plaintiff alleges that defendant Rucker included plaintiff's dismissed infraction in the

23    EFV application out of retaliation for his appeal and filing grievances, and as a result, plaintiff

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 21

1    lost access to programming options, including reinstatement of EFV privileges. Dkt. 18, at ¶ 57.

2    Plaintiff appears to allege this constituted adverse action against him because he was unable to

3    have EFVs with his wife as a result. Dkt. 18, at ¶ 51. As a prisoner generally does not have a

4    liberty interest in visitation in and of itself, it is unclear whether the inclusion of the infraction

5    information in the EFV application packet or even the denial of plaintiff's application for the

6    EFV program, would constitute a "more than minimal" harm sufficient to constitute an "adverse

7    action." *Brodheim*, 584 F.3d at 1269; *Rhodes*, 408 F.3d at 568 n.11. However, defendants do not

8    directly address this issue. Even assuming, without deciding, that defendant Rucker's actions

9    would satisfy the adverse action requirement, as discussed below, plaintiff fails to meet his

10   burden in opposing defendants' Motion with respect to several other elements of his retaliation

11   claim.

12        **3.    Causation**

13        To prevail on his retaliation claim, plaintiff must show that his protected conduct was

14   "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Soranno's*, 874 F.2d at

15   1314. To establish sufficient evidence of this element to overcome an opponent's motion for

16   summary judgment, [the plaintiff] need only "put forth evidence of retaliatory motive, that, taken

17   in the light most favorable to him, presents a genuine issue of material fact as to [the prison

18   official's] intent …." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

19        Defendants move for summary judgment on the grounds that plaintiff fails to present

20   sufficient evidence of a retaliatory motive to support his retaliation claim. Dkt. 46. The Court

21   finds that the defendants' Summary Judgment Motion should be granted due to this lack of

22   evidence. Although Mr. Morton generally claims that defendant Rucker's actions in compiling

23   plaintiff's EFV packet and including information about his infraction were motivated by

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 22

1    plaintiff's litigation in the state court system (Dkt. 18, at ¶ 57), he presents only a general

2    assertion of circumstantial timing without any other supporting evidence. Mr. Morton claims

3    merely a sequence of events: that defendant Rucker compiled plaintiff's EFV application after

4    plaintiff appealed his infraction to the Washington State Court of Appeals and Washington State

5    Supreme Court. *See* Dkt. 18. However, timing alone is not sufficient to support a retaliation

6    claim. *Pratt*, 65 F.3d at 808.

7         Plaintiff also claims that defendant Rucker initiated contact with another individual, Lisa

8    Dandescu, in the Sex Offender Treatment Program. Dkt. 52, at 15; Dkt. 54, at 2. Plaintiff states

9    that defendant Rucker told him he needed to be screened by Ms. Dandescu for the Sex Offender

10   Treatment Program as part of the EFV application process and suggests that the fact defendant

11   Rucker initiated contact with Ms. Dandescu is somehow evidence of a retaliatory motive. *Id.*

12   Defendant Rucker disputes plaintiff's allegation and states that it was Ms. Dandescu who

13   requested that he facilitate a conversation with plaintiff. Dkt. 48, at 5; Dkt. 48-1, at 30. Plaintiff

14   presents no evidence or explanation to support his contention that defendant Rucker was the one

15   who reached out to Ms. Dandescu. Moreover, even if plaintiff did present some evidence

16   supporting this contention, he fails to explain how this fact demonstrates a retaliatory motive on

17   the part of defendant Rucker. "Such conclusory allegations, standing alone, are insufficient to

18   prevent summary judgment." *Sloman v. Tadlock,* 21 F.3d 1462, 1474 (9th Cir. 1994). Thus, even

19   accepting plaintiff's allegations as true, he has failed to meet his burden to put forth evidence of

20   retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of

21   material fact as to defendant Rucker's intent.

22        Plaintiff also claims that defendant Rucker's inclusion of the dismissed infraction in

23   plaintiff's EFV application was retaliation for filing a grievance. Dkt. 18, at ¶ 57. Defendants

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 23

present evidence showing that plaintiff filed only one grievance during the time defendant

Rucker was compiling his EFV application which was signed by plaintiff on May 20, 2016 and

marked received on May 24, 2016 (May 20, 2016 grievance). *See* Dkt. 49-1. However, as

defendants point out, the complaint does not include mention of defendant Rucker, nor was it

ever processed -- plaintiff failed to submit a rewrite after being directed to do so by the

Grievance Coordinator. *Id.*

Plaintiff argues that the May 20, 2016, grievance was intended to be directed against

defendant Rucker for his failure to remove the dismissed WAC 711 infraction from plaintiff's

files. Dkt. 52, at 14. However, this is not evident from the face of the complaint itself. In fact, the

complaint indicates that the Grievance Coordinator specifically directed plaintiff to re-write the

grievance in part because it failed to identify the individual he was grieving. Dkt. 49-1, at 5.

Plaintiff does not dispute that he never re-wrote the grievance. As such, plaintiff presents

no evidence to demonstrate or even to suggest that defendant Rucker was aware of, or reasonably

should have been aware of, a grievance against him. *See Corales*, 567 F.3d at 568 ("In the First

Amendment context, a plaintiff creates a genuine issue of material fact on the question of

retaliatory motive when he or she produces, *in addition to evidence that the defendant knew of*

*the protected speech,* at least (1) evidence of proximity in time between the protected speech and

the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the

speech or (3) evidence that the defendant's proffered reason for the adverse action was false or

pretextual."). Furthermore, plaintiff presents no evidence that defendant Rucker expressed

opposition to the speech, or, as discussed in more detail below, that defendant Rucker's proffered

reason for the adverse action was false or pretextual. Although there may have been proximity in

time between the protected conduct and the allegedly retaliatory action -- timing alone,

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 24

1   particularly under the circumstances here, is not enough. *Pratt*, 65 F.3d at 808. Accordingly,

2   plaintiff also fails to meet his burden of raising a genuine issue of material fact in opposing

3   defendants' Motion with respect to the May 20, 2016 grievance.

4           Plaintiff also submitted several grievances in August of 2016, one of which was directed

5   against defendant Rucker. Dkt. 49-1 at 2, 7 (grievance directed at defendant Rucker was signed

6   by Mr. Morton on August 26, received by DOC on August 29, rejected by DOC as not grievable

7   on September 2, 2016). However, this grievance was submitted several months *after* defendant

8   Rucker had already compiled plaintiff's EFV application. Beyond the August/September 2016

9   grievance and the May 20, 2016 grievance (which was not processed), there is no evidence of

10  any other grievances submitted by Mr. Morton during the time period that defendant Rucker was

11  compiling the EFV application or when defendant Rucker was plaintiff's counselor. Dkt. 49, 49-

12  1. Plaintiff presents no evidence in response to defendants' Motion that would indicate his

13  protected activity of filing grievances was the " 'substantial' or 'motivating' factor" behind

14  defendant Rucker's decision to include information about the circumstances underlying

15  plaintiff's dismissed WAC 711 infraction in his EFV application.

16          In sum, viewing the summary judgment evidence in the light most favorable to plaintiff,

17  the Court concludes that plaintiff has failed to produce evidence of retaliatory motive in

18  opposition to defendants' Motion sufficient to raise a genuine issue of material fact as to

19  defendant Rucker's intent. Accordingly, on this basis alone defendants' Motion for Summary

20  Judgment on this claim should be granted.

21          **4.    Chilling Effect**

22          In *Rhodes*, the Ninth Circuit held that an objective standard governs the chilling inquiry;

23  a plaintiff does not have to show that "his speech was actually inhibited or suppressed," but

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 25

1   rather that the adverse action at issue "would chill or silence a person of ordinary firmness from

2   future First Amendment activities." 408 F.3d at 568–69, *quoting Mendocino Enviro. Center v.*

3   *Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir.1999) (emphasis in original). To hold otherwise

4   "would be unjust" as it would "allow a defendant to escape liability for a First Amendment

5   violation merely because an unusually determined plaintiff persists in his protected activity." *Id*.

6   at 569. Here, defendants argue that plaintiff fails to allege or present evidence of this element of

7   his claim. Dkt. 46, at 22. In response to defendants' motion, plaintiff makes a conclusory

8   allegation that defendant Rucker's actions of including the infraction in his EFV application, and

9   the denial of his EFV application he alleges resulted from the inclusion, would chill or silence a

10  person of ordinary firmness from future First Amendment activities. Dkt. 52, at 18.

11      While it is debatable whether the plaintiff's conclusory statement, made in response to

12  defendants' Motion, is sufficient to meet this element of his retaliation claim, the Court need not

13  reach this issue -- because, even assuming, without deciding, that plaintiff has met this element,

14  as discussed elsewhere in this section, plaintiff fails to meet his burden with respect to several

15  other elements of his retaliation claim.

16      **5.      Legitimate Penological Interest**

17      To prevail on a retaliation claim, a prisoner must show that the challenged action "did not

18  reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 568. In order to survive

19  summary judgment, the plaintiff bears the burden of showing that there was no legitimate

20  penological objective to the defendant's actions. *See Pratt*, 65 F.3d at 806.

21      Mr. Morton has not met his burden to establish that defendant Rucker lacked a legitimate

22  penological goal. Defendant Rucker asserts that he had legitimate safety and security concerns

23  about granting plaintiff and his wife extended family visits, and this explains why he included

24

25

1    information regarding the circumstances of plaintiff's dismissed 2011 infraction in his report.

2    Dkt. 46, at 21. The declaration of defendant Rucker sets forth the facts asserted to support this

3    defense argument. Dkt. 48.

4        As explained earlier in this opinion, the extended family visitation program is a privilege,

5    and not a right, afforded to qualifying inmates. *See* Wash. Rev. Code 72.09.4901 (1995) ("The

6    department shall establish a uniform policy on the privilege of extended family visitation.").

7    Defendants claim that defendant Rucker had concerns about allowing visitation privileges to

8    plaintiff given the nature of his dismissed 2011 infraction. Specifically, defendant Rucker

9    indicates he was concerned about the allegations underlying the ultimately dismissed infraction -

10    - that plaintiff had assaulted his wife during a visit. Dkt. 48, at ¶ 18.

11        Due to the nature of the facts and allegations underlying the infraction, defendant Rucker

12    indicates he had safety concerns about plaintiff's application for extended visitation with his

13    wife. *Id.*, at ¶ 18. Defendant Rucker further states that he also included the infraction information

14    in the EFV application to provide context and explanation as to why plaintiff was re-applying for

15    the program when he had been previously accepted in 2003. *Id.* The Court finds that defendant

16    Rucker's declaration sets forth a legitimate penological interest for including evidence related to

17    the dismissed infraction in plaintiff's EFV application. *See Rizzo*, 778 F.2d at 532 (preserving

18    institutional order, discipline and security are legitimate penological goals); *Barnett* 31 F.3d at

19    816.

20        Plaintiff, in opposition to defendants' Motion, points to an email from defendant

21    Rucker's supervisor Jeneva Cotton, indicating that because the infraction had been dismissed,

22    defendant Rucker should not include the infraction information in the EFV application packet.

23    Dkt. 52 at 3-4. Defendant Rucker acknowledges the email to Ms. Cotton regarding plaintiff's

24

25

1  EFV application. Dkt. 48, at 15. However, at best, these emails are evidence of an internal

2  disagreement between defendant Rucker and his supervisor regarding the type of information

3  that should, or should not be in the application packet. Defendant Rucker's emails to Ms. Cotton,

4  as well as another DOC employee Jean Anderson, and his chronos entries are consistent with his

5  proffered explanation for including the infraction information in the EFV application packet.

6  Specifically, defendant Rucker's emails state (in relevant part): "[c]orrect me if I'm wrong but

7  visitation is still a privilege and this EFV packet could still be denied if the behavior was still

8  there[]" and that he believes "the behavior was still there for the infraction … and they did not

9  beat the infraction." Dkt. 48-1, at 18, 22. Defendant Rucker's chronos entry dated May 19, 2016,

10  submitted in support of defendants' motion, also states that,

> "[t]his is information to try to clarify the past in order for offender
> Morton and his wife to re-apply now for EFV. Offender Morton and his
> wife Sharyn were approved for EFV in 2003. In 2011 he was written an
> infraction for 711 assault of visitor which was his wife. Due to that
> infraction their EFV privilege was terminated for 5 years per policy. …
> Now in 2016 after taking the infraction through the court system it was
> overturned. The infraction was deleted from our systems as though it
> never existed and only shows as information in old documents and
> chronos."

16  Dkt. 48-1, at 11. This entry tends to support defendant Rucker's contention that he believed this

17  information should be included to provide context for explaining why plaintiff was re-applying

18  for EFVs. Under the circumstances, the Court finds the email exchange does not undermine

19  defendant Rucker's explanation of the legitimate penological reasons for including the infraction

20  information in the EFV application packet; nor is it sufficient to imply or raise a question of fact

21  as to whether his motive for including the information was retaliatory.

22      Plaintiff also argues that defendant Rucker included the infraction information in the EFV

23  application in violation of DOC policy. Dkt. 52, at 16. Specifically, he points to DOC 460.000,

24  which he attaches as an exhibit to his reply to defendants' Motion. This exhibit appears to be a

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 28

1    policy of the Washington State Department of Corrections that provides, in relevant part:

2    "[w]hen all rule violations in the report are dismissed or the offender is found not guilty of any

3    violations during a hearing, no records pertaining to the violations(s) will be placed in the

4    offenders central file…. the Disciplinary Hearing Officer may retain the records for statistical,

5    litigation, and recordkeeping purposes only." Dkt. 54, at 8. The policy further provides that

6    "[w]hen all charges in the report have been expunged: … Record of the infraction will be cleared

7    from the offender's electronic imaging file and the Infraction Summary in the offender's

8    electronic file." *Id.* at 9. Plaintiff does not dispute that the infraction information was removed

9    from his central file, nor does he specifically allege it still exists in his electronic imaging file.

10   Furthermore, defendants presented evidence, which plaintiff does not dispute, that the infraction

11   was removed from the Infraction Summary in his electronic file. Dkt. 28-1.

12        Defendant Rucker indicates in his affidavit that, to his knowledge, he did not violate any

13   DOC policy by including information related to a dismissed infraction in the EFV application

14   packet. Dkt. 48, at 5. Furthermore, defendants contend there is nothing in DOC policy to suggest

15   defendant Rucker was not allowed to include information about a dismissed infraction in

16   plaintiff's application. Dkt. 46, at 20. Defendants further note that, in fact, the version of DOC

17   590.1000 in effect at the time specifically requested that counselors "include any separate issues

18   to consider in scheduling visits (e.g., prohibitions against contact with minors or other persons)."

19   *Id.*; Dkt. 47-1, at 28. Finally, the Court notes that defendant Rucker's inclusion of information

20   related to the dismissed infraction in the EFV application does not demonstrate the action was

21   based on a retaliatory motive, in response to plaintiff's protected activity, rather than a genuine

22   security concern.

23

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 29

1    Plaintiff also argues that defendant Rucker never raised any safety or security concerns to

2    himself or his wife. Dkt. 52. However, this does not demonstrate that defendant Rucker did not

3    have these concerns. The concerns are evidenced by Rucker's communications with other

4    employees of DOC. *See, e.g.*, Dkt. 48-1, at 18, 22; Dkt. 48-1, at 11. Plaintiff also contends that

5    defendant Rucker changed his position on supporting plaintiff's EFV application only after

6    defendant Rucker filed the May 20, 2016 grievance. Dkt. 52, at 18. Plaintiff contends that at a

7    May 16, 2016, classification hearing, defendant Rucker indicated he was in favor of restoring

8    plaintiff's EFV visitation. *Id.* However, the chronos note cited by plaintiff shows that defendant

9    Rucker recommended plaintiff's custody level remain the same and that he "work on restoring

10   EFV privileges that were taken due the 711 infraction." Dkt. 54, at 7. The chronos entry does

11   not, in fact, indicate that defendant Rucker ultimately supported the EFV application.

12   Furthermore, the Court agrees with defendants that defendant Rucker's statement that Mr.

13   Morton should work on restoring EFV privileges -- expressed before Mr. Rucker began working

14   on reassembling plaintiff's EFV application packet -- does not undermine the validity of the

15   concerns defendant Rucker expressed later, when the application packet was compiled. Dkt. 57,

16   at 6.

17       Plaintiff also contends that defendant Rucker recommended (at the Facility Risk

18   Management Team (FRMT) meeting) approval of plaintiff's reinstatement of his EFV visitation.

19   Dkt. 52, at 17. Defendant Rucker disputes this, indicating that, during the FRMT meeting he

20   stated he did not agree with restoring EFV privileges to plaintiff, but that ultimately the FRMT

21   recommended the application be granted and forwarded the EFV application packet on for the

22   next level of review. Dkt. 48, at 4. Even if defendant Rucker did recommend approving

23   reinstatement of plaintiff's EFV visitation at the FRMT meeting, as plaintiff claims, the FRMT

24

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 30

1    meeting took place on June 1, 2016 -- *after* plaintiff filed the May 20, 2016 grievance. *Id.*; Dkt.

2    48-1, at 26. Thus, even accepting plaintiff's allegations as true, they do not support plaintiff's

3    contention that defendant Rucker changed his position from supporting the EFV application

4    before the grievance to not supporting the EFV application after (and because of) the May 20,

5    2016, grievance. In fact, if defendant Rucker ultimately supported the EFV application at the

6    FRMT meeting it would cut against plaintiff's argument that defendant Rucker changed his

7    position from supporting to opposing the EFV application because of the May 20, 2016,

8    grievance.

9        Accordingly, the Court finds that plaintiff fails to set forth facts demonstrating the lack of

10   legitimate penological objective for defendant Rucker's actions. As such, plaintiff fails to meet

11   his burden in opposing defendants' Motion for Summary Judgment. Accordingly, on this basis as

12   well, defendants' Motion should be granted with respect to plaintiff's retaliation claim.[2]

13                            **IV. CONCLUSION**

14       Based on the foregoing, the undersigned recommends that defendants' Motion for

15   Summary Judgment, Dkt. 46, be **GRANTED**, and plaintiff's Motion for Summary Judgment,

16   Dkt. 44, be **DENIED**, and the plaintiff's complaint be dismissed with prejudice. This dismissal

17   with prejudice should not be counted as a strike under the Prison Litigation Reform Act, 28

18   U.S.C. § 1915 (g) if adopted by the District Court. *El-Shaddai v. Zamora*, 833 F.3d 1036, 1044

19   (9th Cir. 2016) (summary judgment dismissal counts as a strike if the Court reviews the

20   complaint on its face, dismisses for failure to state a claim or one of the other allowable reasons

21

22

23   _____

     [2] Because plaintiff has established no violation of a federal constitutional right arising out of his
     complaint, the Court need not address either party's remaining arguments regarding personal participation
24   with respect to defendants Johanson, Jackson, and Glebe, qualified immunity, or regarding plaintiff's
     claims against defendants Jackson, Glebe, and Rucker in their official capacities.

25

REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT - 31

1    under the PLRA, and does not consider the declarations and other evidence outside the complaint

2    to decide the case on the merits).

3        The parties have **fourteen (14) days** from service of this Report and Recommendation to

4    file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file

5    objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474

6    U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration

7    on **March 1, 2018**, as noted in the caption.

8        Dated this 9th day of February, 2018.

9

10

11        Theresa L. Fricke
          United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25